UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Christopher K. Beckstrom,<br><br>　　　　　Plaintiff<br><br>v.<br><br>GEICO General Insurance Company and GEICO,<br><br>　　　　　Defendants | Case No. 2:24-cv-00480-CDS-BNW<br><br>**Order Granting Plaintiff's Motion to Remand and Motion to File Surreply, Granting Defendants' Motion to File Surreply and Denying as Moot Motions to Dismiss and Amend**<br><br>[ECF Nos. 6, 8, 12, 24, 26] |

Before the court are four motions: a motion to dismiss filed by defendants GEICO General Insurance Company and GEICO (ECF No. 6), a motion to amend the complaint (ECF No. 8) and a motion to remand the case (ECF No. 12) filed by plaintiff Christopher Beckstrom, a motion for leave to supplement their response to plaintiff's motion to remand filed by defendants (ECF No. 24), and a "request" for leave to supplement his reply to plaintiff's motion to remand filed by Beckstrom (ECF No. 26). Because this case was removed exclusively on the grounds of diversity jurisdiction, and because defendants have not demonstrated that the amount in controversy exceeds $75,000, I grant plaintiff's motion to remand and deny as moot defendants' motion to dismiss.

I.　**Background**[1]

Beckstrom, an attorney, suffered injuries following a 2019 automobile accident. Compl., ECF No. 1-2 at 3. He and his wife were in the car when they were hit by another vehicle driven by non-party Julie Marie Rau. *Id.* Beckstrom sought payment from Rau's insurer for medical expenses and other damages. *Id.* at 4. They ultimately settled for $100,000 on August 2, 2021. *Id.* Beckstrom then sought additional payment from GEICO General, his insurer. *Id.* On August 3, 2021, the day after settlement with Rau's insurer, Beckstrom claims he sent notice to GEICO,

---

[1] The court's citations to the complaint are to provide background information and do not serve as a findings of fact.

informing them of the settlement and that he "received two radiofrequency ablations (also known as RFAs) with another pending that week and that his physician informed him that he could expect to have repeat RFAs every 6 – 18 months." *Id.* On September 27, 2021, Beckstrom claims that he sent a second notice to GEICO informing it that he received two additional RFAs, that he would be sending his bills and records, that he was providing GEICO "authorization to obtain the same bills and records, and requesting underinsured motor vehicles ("UIM") benefits." *Id.* Beckstrom alleges that on October 20, 2022, GEICO responded, having "evaluated Plaintiff's claim at $105,094 ($64,094.17 in Plaintiff's medical bills and an additional $40,000.00 for general compensation)." *Id.* at 4–5. Because Beckstrom had already received $100,000 from Rau's insurance carrier, he was offered $5,094.17 to resolve his claim. *Id.* at 6. Beckstrom does not allege that he responded to this communication.

Beckstrom states that he next reached out to GEICO on August 22, 2023, sending "a communication which stated that he had just received his fifth RFA and that he wanted his claim to be concluded." *Id.* at 5. He alleges that he did not receive a response from GEICO until October 27, 2023. *Id.* "[A]fter an exchange with Plaintiff, GEICO agreed to pay Plaintiff his $50,000 UIM policy limit." *Id.* Beckstrom contends that because he had not heard back from GEICO by September 25, 2023, he hired an attorney. *Id.* He claims that, because of GEICO's delay in responding, he owes the attorney $10,000 from his $50,000 GEICO policy payment. Pl.'s first suppl. to initial disclosures, ECF No. 26 at 13.

Beckstrom filed suit in Nevada state court claiming that GEICO and GEICO General breached the covenant of good faith and fair dealing, violated Nevada's unfair claims practices act (NRS 686A.310), and violated Nevada's civil racketeering influenced and corrupt organizations act (RICO). ECF No. 1-2 at 6–24. Beckstrom declared that the prayer for relief exceeded $50,000 in damages, specifically including:

    1. Compensatory damages which include loss of UIM contract benefit, stress, fear, humiliation, attorney's fees, out-of-pocket expenses, and distress in an amount which exceeds $15,000.00,

   2. Punitive damages to be determined at trial, but which exceeds $15,000.00,

   3. Reasonable attorneys' fees and costs, and

   4. And other relief as to the Court seems just and proper.

*Id.* at 1, 24.

  Defendants removed the action based on diversity jurisdiction, contending that Beckstrom and defendants are citizens of different states and that Beckstrom seeks damages over $75,000. ECF No. 1 at 2–5. They assert that Beckstrom seeks to recover (1) the out-of-pocket expense cost that Beckstrom estimated prior to trial at $270,000 and includes his five RFAs (totaling an estimated $30,750) as well as for the future RFAs he will be required to receive; (2) "a multiple of the [] policy limits," which would equate to a "multiple of" $50,000; (3) attorney fees that reasonably estimated would exceed $50,000; and (4) punitive damages that would reasonably exceed $50,000. *Id.* at 3–4. Defendants argue that this total exceeds the $75,000 amount-in-controversy requirement and thus this court has subject matter jurisdiction over the claims.

  Beckstrom filed a motion to remand arguing that GEICO failed to meet its burden to show that the amount-in-controversy exceeds $75,000. ECF No. 12. Specifically, he argues that future medical costs were not pled and would not be pursued, the "multiple of the [] policy limits" quote is misrepresented, GEICO has failed to show any evidence that attorney's fees would reach close to the jurisdictional threshold, and, because GEICO had already paid out the $50,000, the potential punitive damages—as well as damages generally—would not arise to such a level as to reach the threshold. *Id.* at 3–7. Defendants responded that even Beckstrom's RICO claim alone, alleging "a vast conspiracy coordinated by Warren Buffet and implemented through a software called, 'Claim IQ,'" would exceed $75,000 given the penalty of treble damages, as would Beckstrom's attorney's involvement in this case—including responding to

defendants' motion to dismiss[2]—would arise to over $50,000. ECF No. 14 at 5–8. They also argue that Beckstrom has alleged that his future medical costs exceed $270,600, which greatly exceeds the jurisdictional threshold. *Id.* at 3. In his reply, Beckstrom argues that he does not seek any future medical costs from defendants. ECF No. 18 at 2–3. He also asserts that the cost of the attorney because of defendants' response delay was $10,000. *Id.* at 3–4.

Defendants then filed a motion for leave to supplement their response in what I will construe as a motion to submit a surreply.[3] ECF No. 24. They argue that, despite what Beckstrom argued in his motion to remand and his reply, "his initial disclosures . . . detail $61,398.51 in medical damages, plus an undisclosed amount in 'pain and suffering, economic losses, mental anguish, emotional distress, loss of enjoyment of life, and punitive damages' '[t]o be determined at trial.'" ECF No. 24 at 1. In support of their argument, they attach Beckstrom's initial disclosures. *Id.* at 5.

Beckstrom filed a "request for leave to supplement his reply," which the court will construe as a motion to file an additional surreply from the plaintiff. ECF No. 26. Although I grant Beckstrom's motion to file an additional surreply because it is helpful to the resolution of the pending motions before the court, he is reminded that in the future, surreplies that are not filed by motion will not be considered. *See* LR 7-2(b) ("Surreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged."). In this request, Beckstrom attaches correspondence from opposing counsel following a June 7, 2024, meet-and-confer, as

---

[2] Defendants also filed a motion to dismiss. ECF No. 6. Beckstrom responded (ECF No. 8) and defendants replied (ECF No. 11). Beckstrom's response included a countermotion to amend his complaint. ECF No. 8; *see* Proposed am. compl., ECF No. 8-1.

[3] Local Rule 7–3(b) allows for motion, a response, and a reply. No provision exists for filing a surreply. Thus, a party must obtain leave from the Court before filing a surreply. Although counsel appropriately sought leave of court to file this document, it is in fact a surreply, not a supplement. "A sur-reply may only be filed to address new matters raised in a reply to which a party would otherwise be unable to respond." *Kanvick v. City of Reno*, 2008 WL 873085, at *1 n.1 (D. Nev. Mar. 27, 2008). Because the court finds the information in the surreply relevant to resolution of this matter, the motion to file a surreply is granted.

well as his June 10, 2024 supplement to his amended initial disclosures, which were filed June 5, 2024. ECF No. 26 at 1. The email from opposing counsel stated:

> I explained to you the importance of a complete and full disclosure of plaintiff's damages pursuant to Rule 26, given that plaintiff's motion to remand is pending before the Court and because we will rely on any representations and omissions from plaintiffs damages computation. I informed you that this was particularly important, as a result, and should something be left off that should have been included, we would pursue all available avenues to seek to foreclose plaintiff from seeking that category or type of damages based upon a theory of estoppel or something similar. You confirmed that you understood.
>
> During our call, you confirmed that your client is not seeking any damages that would be separately available under a breach of the implied covenant claim ("bad faith") or a Nevada UCPA claim. You confirmed that, instead, the damages sought under those two claims are only those damages available under both causes of action. In other words, if there is a category or type of damage that is available to a prevailing Nevada UCPA plaintiff, but not available to a prevailing "bad faith" plaintiff (or vice versa), your client is not seeking such damage. Your client is only seeking the cumulative damages available under both a bad faith and Nevada UCPA claim.
>
> During our call you also confirmed that the $10,000 in attorneys' fees paid pre-litigation is the only "out-of-pocket damages" sought by your client. You also confirmed that, other than punitive damages, ***the $10,000 in attorneys' fees paid pre-litigation is the only economic damages sought by your client under any theory or cause of action*** (whether that's sought as part of the bad faith, Nevada UCPA and/or Nevada RICO claims).
>
> We discussed, at length, whether plaintiff is seeking disgorgement or return of profits, or using alleged profits as a measure of damages. You stated that your client is not seeking disgorgement or unjust enrichment in any form, and also would not use alleged profits or the "float" discussed at length in the complaint as a measure of punitive damages.
>
> . . .
>
> If anything above is inaccurate or if I have omitted anything, please let me know immediately.

ECF No. 26 at 4 (emphasis added). Beckstrom does not allege that he responded to this email. In his June 10, 2024, supplement to his amended initial disclosures, Beckstrom alleges he suffered past attorney's fees of $10,000 and "Other Attorney's Fees, Pain and Suffering, mental anguish,

emotional distress, loss of enjoyment and disruption of life, inconvenience and punitive damages . . . To be Determined at Trial." *Id.* at 13.

## II. Legal standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a case is filed in state court between parties who are citizens of different states, and the amount in controversy is at least $75,000, the defendant may remove the case to federal court. 28 U.S.C. §§ 1332, 1441, 1446. But there is a strong presumption against removal jurisdiction, and "federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant always has the burden of establishing that removal is proper. *Id.*

## III. Discussion

It is undisputed that there is diversity of citizenship between the parties. Thus, the question is whether the amount in controversy exceeds $75,000 to enable this court to exercise diversity jurisdiction over this action.

In determining the amount in controversy, courts first look to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnote omitted). The $75,000 threshold is satisfied if the plaintiff claims a sum greater than the jurisdictional requirement. *See id.* at 288–89; *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986). However, like in this case, when removal jurisdiction is challenged by a plaintiff, evidence establishing the amount in controversy is required. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* (citing 28 U.S.C. § 1446(c)(2)(B)) (emphasis added). As to the kind of evidence that may be considered, the Ninth Circuit has adopted the "practice of considering facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to

the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Conclusory allegations are insufficient. *Id.* at 1090 (citation omitted).

In the conclusion of his complaint, Beckstrom prays for: (1) "compensatory damages which include loss of UIM contract benefit, stress, fear, humiliation, attorney's fees, out-of-pocket expenses, and distress in an amount which exceeds $15,000.00"; (2) "punitive damages to be determined at trial, but which exceeds $15,000.00"; and (3) reasonable attorneys' fees and costs. ECF No. 1-2 at 24. While this number could potentially surpass $75,000, depending on the outcome of trial, it is not clear from the face of the complaint that it will.

The documents attached to Beckstrom's surreply offer additional insight into the amounts claimed. Following the parties' meet-and-confer in June 2024, the attorney for the defendants emailed Beckstrom stating that he "confirmed that, other than punitive damages, the $10,000 in attorneys' fees paid pre-litigation is the only economic damages sought by your client under any theory or cause of action (whether that's sought as part of the bad faith, Nevada UCPA and/or Nevada RICO claims)." ECF No. 26 at 4. He concluded by stating that "[i]f anything above is inaccurate or if I have omitted anything, please let me know immediately." *Id.* There is no evidence in the record that Beckstrom responded to this letter disputing this summary of their meet and confirm. Beckstrom did, however, file supplements to his amended disclosures following that email, on June 10, 2024, alleging that his claimed damages are past attorney's fees of $10,000 and "Other Attorney's Fees, Pain and Suffering, mental anguish, emotional distress, loss of enjoyment and disruption of life, inconvenience and punitive damages . . . To be Determined at Trial." *Id.* at 13. The amount of these "other Attorney's fees" is unstated and therefore unclear.

It appears Beckstrom is attempting to speak from both sides of his mouth: he seeks to avoid federal jurisdiction by disclaiming that damages will exceed $75,000 while refusing to stipulate so. Worse, he seemingly is purposefully omitting the actual amount he seeks to recover

by way of this litigation. The five briefs filed related to this motion to remand make clear that the parties have been operating on vastly different assumptions as to the total expected damages in this case. ECF Nos. 12, 14, 18, 24, 26. However, the meet-and-confer that occurred on June 7, 2024, evidently led to a mutual understanding between the parties which the attorney for the defendants memorialized this in writing and offered Beckstrom and his attorney the opportunity to correct the statement. *See* ECF No. 26 at 4. No such correction was made. Nor has the amount in controversy been clarified.

      Here, the court construes Beckstrom's failure to respond (or to present evidence that he responded) to defendants' counsel's message as an apparent admission that the only claimed damages are for punitive damages and the $10,000 in attorneys' fees paid pre-litigation, a position that is inconsistent with the later representation that Beckstrom is seeking "Other Attorney's Fees, Pain and Suffering, mental anguish, emotional distress, loss of enjoyment and disruption of life, inconvenience and punitive damages . . . To be Determined at Trial." ECF No. 26 at 13. Such gamesmanship is unwelcomed in this court. Counsel is reminded of their obligations under Federal Rule of Civil Procedure 11. The court could interpret Beckstrom's refusal to state the amount of damages he is seeking an admission that his damages exceed $75,000. *See Ray v. State Farm Lloyds*, 1999 U.S. Dist. Lexis 3103 (N.D. Tex. March 10, 1999) (discussing that plaintiff's refusal to stipulate that the amount in controversy does not exceed $75,000 indicates that the actual amount in controversy exceeds $75,000.).

      But, that admission together with the conflicting information regarding what Beckstrom is actually seeking to recover is insufficient for the court to find defendant has met their burden of showing by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

      I cannot find that the amount in controversy exceeds $75,000 and therefore grant Beckstrom's motion to remand. Although defendants argue that punitive damages could exceed the jurisdictional threshold, they only cite to one case involving a $26,394,765.39 punitive

damages payout. ECF No. 1 at 4 (citing *Merrick v. Paul Revere Life Ins. Co.*, 594 F. Supp. 2d 1168, 1170 (D. Nev. 2008). That case, involving a benefits claim in excess of $1,000,000, is inapposite. *Merrick*, 594 F. Supp. 2d at 1170. In the notice of removal, defendants state that the punitive damages claim "likely exceeds $50,000," ECF No. 1 at 4, and then in their response to the remand motion, defendants state that the punitive damages will likely exceed $100,000, ECF No. 14 at 7. Even if the punitive damages *do* exceed $50,000, this, combined with the remaining $10,000 claimed, do not necessarily exceed the $75,000 threshold. Where the $100,000 number came from (as well as the original $50,000 number) is unclear and does not appear to be based on analogous case law. Beckstrom runs the risk of the state court estopping him from now demanding significant additional damages in his supplemental amended initial disclosures in light of his refusal to stipulate or clarify here. *See Cicero v. Target Corp.*, 2013 WL 3270559, at *2 (D. Nev. June 26, 2013) ("[B]ased on plaintiff's arguments in her motion to remand that her damages are limited to $74,999.99, plaintiff is judicially estopped from arguing for more than $75,000 in damages.") That issue, however, is not for this court to decide. Consequently, Beckstrom's motion for remand is granted.

IV.     Conclusion

IT IS THEREFORE ORDERED that Beckstrom's motion to remand [ECF No. 12] is GRANTED.

IT IS FURTHER ORDERED that defendants' motion to dismiss [ECF No. 6] is DENIED as moot.

IT IS FURTHER ORDERED that Beckstrom's motion to amend the complaint [ECF No. 8] is DENIED as moot.

IT IS FURTHER ORDERED that defendants' motion for leave to supplement their response to plaintiff's motion to remand [ECF No. 24] is GRANTED.

IT IS FURTHER ORDERED that Beckstrom's "request" for leave to supplement his reply to plaintiff's motion to remand **[ECF No. 26] is GRANTED**.

The Clerk of Court is kindly instructed to remand this matter, Case No. A-24-886423-C, to the Eighth Judicial District Court, Department 17, and to close this case.

Dated: December 17, 2024

_____
Cristina D. Silva
United States District Judge